UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ANTHONY WAYNE HEFLIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil No. 16-204-ART |
| v. | ) | |
| | ) | |
| RANDY WHITE, *Warden*, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

*** *** *** ***

Since 1984, Anthony Wayne Heflin has been serving out a seventy-year sentence for burglary and rape. R. 1-1 at 4. So far he has filed three petitions for habeas corpus pursuant to 28 U.S.C. § 2254. Two have been denied. *Heflin v. Smith*, No. 91-6256, 1992 WL 96344 (6th Cir. May 7, 1992); *Heflin v. Smith*, No. 88-6136, 1989 WL 36900 (6th Cir. April 19, 1989). He has now filed a third in this Court. R. 1. Because the Court may not consider second or successive habeas petitions until the Sixth Circuit gives it permission to do so, Magistrate Judge Ingram has recommended transferring this case to the Sixth Circuit. R. 12. The Court agrees with the recommendation and therefore adopts it over Heflin's objections.

I.

Heflin's petition is based on an event that allegedly happened over thirty years ago. Heflin says that, before he went to trial on the burglary and rape charges in 1986, his lawyer failed to pass along a plea offer from the state: five years for the burglary, twenty for the rape, for a sentence totaling twenty-five years. R. 1 at 6. According to Heflin, this failure "forced [him] to stand trial"—whereas, had he known the offer, he would have taken it.

R. 11 at 4.  Thus, Heflin argues that his lawyer deprived him of his Sixth Amendment right to effective assistance of counsel.  R. 1 at 6; R. 11 at 6.

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), passed in 1996, limits a district court's ability to hear "second or successive" habeas petitions brought under Section 2254.  Before such a petition even "is filed in the district court, the applicant shall move in the appropriate court of appeals"—the Sixth Circuit, around these parts—"for an order authorizing the district court to consider" it.  28 U.S.C. § 2244(b)(3)(A).  Since this is Heflin's third petition under Section 2254, and since the Sixth Circuit has not authorized this Court to consider it, at the moment Heflin would appear to be in the wrong court.

But Heflin filed his first two petitions in 1989 and 1992, respectively, when AEDPA was only a twinkle in Congress's eye.  Applying AEDPA to those petitions "would 'attach[] new legal consequences to events completed before [the law's] enactment.'"  *In re Hanserd*, 123 F.3d 922, 930 (6th Cir. 1997) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)).  This retroactivity would be "impermissible" because Congress never implied that it meant for AEDPA to impose a law of unintended consequences on old conduct.  *Id.*  Thus, when "the original petition[s] [were] filed pre-AEDPA," courts "must analyze whether the second or successive habeas petition would have survived" under the standard that courts applied to such petitions before AEDPA came along.  *Cress v. Palmer*, 484 F.3d 844, 852 (6th Cir. 2007).  For petitioners who fail to meet that standard (which is explained below), AEDPA's "second or successive" rules apply; since those petitioners could not have brought such petitions anyway, AEDPA does not attach legal consequences that they could not have seen coming.  *See In re Sonshine*, 132 F.3d 1133, 1135 (6th Cir. 1997); *In re Owens*, 525 F.

2

App'x 287, 290 (6th Cir. 2013) ("[H]abeas corpus relief would not have been permitted under the pre-AEDPA . . . standard, and the AEDPA can be applied in this case.").

Before AEDPA, courts applied the "abuse of the writ" standard, which, as its name implies, prevented prisoners from abusing the Great Writ through repetitious petitioning. Under that standard, a prisoner can bring a second or successive habeas petition containing a new claim without "prior authorization from the court of appeals." *Cress*, 484 F.3d at 852. First, however, he must "show cause for failing to raise" the claim in a previous petition and "prejudice therefrom." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To show cause, he must show that he neither "possessed, [n]or by reasonable means could have obtained, a sufficient basis to allege" the claim in a previous petition. *Id*. at 498. And to show prejudice, he must show that the constitutional error he alleges "had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Cress*, 484 F.3d at 852 (quoting *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994)).

Judge Ingram has filed a thorough Recommended Disposition, concluding that Heflin "has not demonstrated cause for failing to raise this [assistance-of-counsel] issue previously." R. 12 at 5. Because Heflin thus cannot satisfy the first part of the abuse-of-the-writ standard, Judge Ingram found that "it is unnecessary to examine whether he has shown prejudice." *Id*. Applying AEDPA, Judge Ingram determined that the Court cannot hear this petition since the Sixth Circuit has not authorized Heflin to bring it. He therefore recommends sending the petition up a level for approval (or disapproval). *Id*. at 7.

Heflin objects. R. 13. He argues that Judge Ingram's essential premise—that Heflin either knew or should have known about this allegedly undisclosed plea offer when he filed

his earlier petitions—is "nothing more than speculation, surmise[,] and conjecture." *Id.* at 6. Heflin contends that he only learned of the offer in 2013, after his father found—in a box of papers in his basement—a document noting the five-year offer for the burglary. R. 3 at 3.[1]

## II.

The Court must review *de novo* those portions of Judge Ingram's recommendation to which Heflin objects. *See* 28 U.S.C. § 636(b)(1); *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). Thus, the Court must determine for itself whether Heflin has "show[n] cause for failing to raise" his current ineffective-assistance argument in a previous habeas petition. *McCleskey*, 499 U.S. at 494.

If Heflin had actual knowledge of the plea agreement before bringing his past habeas petitions, then of course he "possessed . . . a sufficient basis to allege" ineffective assistance in one of those petitions—and will be unable to show cause for failing to do so. *Id.* at 498. The record shows that he had such knowledge. The Kentucky Court of Appeals found, when denying Heflin post-conviction relief on the same claim he brings here, that the record "refutes his claim that he did not know about the plea offer until 2013." R. 7-4 at 49. Specifically, "the parties mentioned a possible plea to the burglary indictment at the September 14, 1984, hearing" just before trial. *Id.* Indeed, that was the same hearing where Heflin says that he "clearly stated that he wanted to plead guilty to the burglary." R. 13 at 2. Although Heflin has argued—both here and before the state courts—that the state presented

---

[1] According to Heflin, the document's chain of custody runs like this: His lawyer had it first; when the lawyer died in the mid-90s, his family gave Heflin's mother a folder with Heflin's name on it; when she entered a nursing home in the late 90s, her brother put all her belongings in his storage unit; in the late 2000s, when he could no longer pay for the unit, he gave the folder to Heflin's father, who stored it in the basement. R. 3 at 1–2.

4

him an offer on the rape charge only, that claim is unavailing: "[T]he record confirms that the [state] offered him twenty years on the rape indictment and five years on the burglary indictment." *Id.*; *see* R. 1-3 (pretrial order memorializing state's offer of five years for burglary); R. 1-4 (pretrial order memorializing state's offer of twenty years for rape). Perhaps most convincingly, Heflin himself has admitted that he knew about both offers when they were made. In its opinion, the Kentucky Court of Appeals quoted from one of Heflin's previous motions for post-conviction relief, where Heflin said that "[b]efore [he] proceeded to trial he was offered a plea bargain of 25 years on his indictment." R. 7-4 at 49. That twenty-five years would have been the sum of the state's two offers.

Unless a petitioner can show "clear and convincing evidence" otherwise, the Court must presume the state courts have determined the facts correctly. 28 U.S.C. § 2254(e)(1). Heflin asserts that the above account—which the Kentucky Court of Appeals told and then Judge Ingram retold—is "simply not factually true," R. 13 at 2, and he quotes some of his own previous statements to the same effect, *id.* at 3. But Heflin must do more than assert that the state court got the facts wrong; he must show, with clear and convincing evidence, that it did. And his words alone are not "clear and convincing evidence" of what they assert. Because he offers no such evidence, the Court can take the state court's account as true.

In any event, the Court can see the record for itself. And the record shows that Heflin had actual knowledge of the state's plea offers. At the September 14th pretrial hearing, his lawyer openly discussed Heflin's intent to plead to some charges and force the state to trial on others. *See* R. 1-2 at 4–5. The transcript from that hearing, which Heflin attached to his habeas petition, shows Heflin participating in it actively. *Id.* at 5–7. Even before trial, then,

5

Heflin knew of his opportunity to plead. If his lawyer failed to pass along any of the offers discussed, Heflin would have known about it by the time he filed his first habeas petition— indeed, by the time he went to trial. And thus he could have addressed that alleged failure in a previous petition.

Besides, as Judge Ingram noted, a petitioner can still fail the "abuse of the writ" test without having actual knowledge. If "by reasonable means" he "could have obtained[] a sufficient basis to allege" his ineffective-assistance claim in a previous petition, then Heflin should have brought it then—and will be unable show sufficient "cause" for the Court to allow him to bring it now. *McCleskey*, 499 U.S. at 498.

The record shows that Heflin had the means to bring his ineffective-assistance claim in a previous petition. In fact, the record *is* the means: If Heflin's lawyer did in fact fail to pass along the plea offers, a look at Heflin's docket sheet would have revealed the failure. According to the docket sheet that Heflin attached to his objections to Judge Ingram's report, the trial court noted the plea offers on the record. R. 13 at 8 (listing pretrial order filed July 31, 1984); *see* R. 1-3 (pretrial order date-stamped "July 31 1984" noting the five-year plea offer); R. 1-4 (pretrial order date-stamped "July 31 1984" noting the twenty-year plea offer). Court records are public. Aside from asserting that he "never had access to" his own record in particular, Heflin fails to show that he could not have seen it if he had tried to do so in the years between his trial and now. R. 13 at 4. Additionally, Heflin admits that he could access the trial transcripts. *See id.* Although Heflin calls it "absurd" to think that he could have accessed the record just because he did access the trial transcripts, he offers no proof that the record was somehow less available than the transcripts. *Id.* The Court can therefore assume

6

that the record was available for perusal when Heflin was writing his previous petitions.  And the Court does not even need to assume:  As the Kentucky Court of Appeals has pointed out, Heflin discussed the record in a motion for post-conviction relief that he penned in 1986, years before he filed any habeas petitions under Section 2254.  R. 7-4 at 49; *see* R. 7-3 at 85 (July 14, 1986, motion to vacate) ("[Heflin] states that the record is filled with numerous errors[.]").  If Heflin knew enough about the record to use it in motions that predated his first and second habeas petitions, he could reasonably have used it in those petitions.

Heflin responds in two ways.  First, he argues that a "presumption" should apply: Because he says "he would have jumped on the offer," that he neither pled guilty nor argued ineffective assistance in earlier petitions proves that he learned about the offer only recently. R. 13 at 6.  Heflin is right that "[c]ommon sense must not be a stranger" here.  *Id.*  In his view, common sense directs the Court to conclude that, because Heflin *did* not do something (*i.e.*, plead guilty or raise an ineffective-assistance claim in a previous petition), he *could* not do that thing (because he did not know about the offer).  But consider this analogy:  When a basketball player who averages twenty points per game scores zero on a given night, the common-sense conclusion is not that he couldn't have made a shot.  He just didn't make one. Some other evidence—for example, that he was injured and therefore sitting out that game— is necessary to prove that he *could* not do what he gets paid to do (score points).  Likewise, to prove that he could not have pled guilty or argued ineffective assistance earlier than now, some evidence must show that Heflin was actually prevented from doing so.  Aside from the self-serving statement that he did not and therefore could not, Heflin offers no such evidence. Nor does it appear that he could.  As Judge Ingram correctly concluded, the evidence shows

Heflin actually knew about the plea offer before he filed this petition, before he filed his previous petitions, and, indeed, before he went to trial. R. 12 at 4. And if he did not actually know about the offer in 1984, he had reasonable means to find out about it before bringing his first habeas petition, which suffices to end the abuse-of-the-writ inquiry.

Second, Heflin argues that Judge Ingram mistook an important date. He says Judge Ingram wrote that "[t]wo deals were offered to [Heflin] during a pre-trial hearing on July 31, 1984." R. 13 at 2. As Heflin points out, "there was never any hearing" on that particular day: Although the orders resulting from the hearing were docketed July 31, the hearing itself appears to have taken place July 30. *See* R. 1-3; R. 1-4. On this, Heflin and Judge Ingram agree. Judge Ingram actually wrote that "[t]wo plea deals were offered to [Heflin] during a pretrial conference on July 30, 1984," R. 12 at 4, the correct date according to the record. Moreover, Judge Ingram has simply pointed out that the plea offer had been discussed and docketed well before trial; that Heflin knew (or reasonably could have known) about the offer before filing his previous petitions; and thus that, if his lawyer really had failed to pass the offer along, Heflin could have noted that failure before this third petition. *Id.* at 4–5. Those points are correct, and would be correct even if Judge Ingram had been off by a day about the date of the hearing, which he was not.

Heflin has not "show[n] cause for failing to raise" his ineffective-assistance claim in a previous petition. *McCleskey*, 499 U.S. at 494. As such, he has not satisfied the pre-AEDPA "abuse of the writ" standard, and AEDPA applies. *See In re Owens*, 525 F. App'x at 290.

III.

Although Heflin does not specifically object to Judge Ingram's AEDPA analysis, the Court will briefly paraphrase that analysis here because it dictates how the Court must dispose of this case.

Before the Court can hear a "second or successive" habeas petition, AEDPA requires the petitioner to "move in the [Sixth Circuit] for an order authorizing" the Court to hear that petition. 28 U.S.C. § 2244(b)(3)(A). A petition is second or successive if "it raises a claim that could have been raised in [an earlier] petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006). "Because the pre- and post-AEDPA standard for evaluating successive petitions are so similar," the Sixth Circuit has noted that "there will likely be few cases . . . in which the difference matters." *Hanserd*, 123 F.3d at 934 n.21. (In fact, as the Sixth Circuit has also noted, "courts defining 'second or successive' generally apply [abuse-of-the-writ] decisions, including those decisions that predated AEDPA." *Bowen*, 436 F.3d at 704.)

This is not a case where the difference matters. The evidence shows that Heflin knew about the plea offer when it was made—and even if not, that he had reasonable means to find out about it before filing his first petition. His ineffective-assistance claim is based on that allegedly un-relayed offer. If he did not deliberately abandon that claim in earlier petitions, his failure to raise it in them was nevertheless inexcusable neglect.

Because his current petition is, therefore, "second or successive," Heflin must ask the Sixth Circuit's permission to bring it. 28 U.S.C. § 2244(b)(3)(A); *see In re Sims*, 111 F.3d

9

45, 47 (6th Cir. 1997).  So far, he has not.  Until he does, the Court cannot hear his petition.[2] The Court instead has an "obligation to transfer the case" to the Sixth Circuit so that it can decide whether Heflin deserves its permission to proceed.  *In re Bowling*, 422 F.3d 434, 400 (6th Cir. 2005).  As Judge Ingram recommends, that is what the Court will do.

Accordingly, it is **ORDERED** as follows:

(1)     Heflin's objections to Judge Ingram's Recommended Disposition, R. 13, are **OVERRULED**.

(2)     Judge Ingram's Recommended Disposition, R. 12, is **ADOPTED** as the opinion of the Court.

(3)     This case is **TRANSFERRED** to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1631.

(4)     Heflin's motion for equitable tolling, R. 3, is **DENIED AS MOOT**.

This the 31st day of January, 2017.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**

---

[2]  Or his related motion for equitable tolling, R. 3, which the Court will deny as moot.  If the Sixth Circuit permits Heflin to bring the petition, he may reassert his tolling arguments.